**NATIONAL CONTRACTING CO. et al. v. DRAINAGE DIST. NO. 17 OF MISSISSIPPI COUNTY, ARK.**

(Circuit Court of Appeals, Eighth Circuit. December 8, 1926.)

No. 7361.

Drains ⬤═49—Drainage district held not liable to contractor for delay caused in removing obstructing bridge.

A drainage district, which, though not required by the written contract, assumed the duty of removing a steel bridge over a bayou being dredged by contractors, *held* in view of the general provisions of the contract, and the fact that the bridge was on a main highway entitled to notice from the contractors of the time when the removal would be necessary, and where, after receipt of such notice, it used reasonable diligence, it was not liable for delay caused the contractors.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit in equity by the National Contracting Company and another against Drainage District No. 17 of Mississippi County, Ark. Decree for defendant, and complainants appeal. Affirmed.

J. T. Coston, of Osceola, Ark., for appellants.

Z. B. Harrison, W. Leon Smith, and Jesse Taylor, all of Blytheville, Ark., for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. May 31, 1918, appellee entered into a contract with appellants, National Contracting Company and Harding Construction Company, for the construction of improvement No. 29, being for that part of the work in drainage district No. 17 of Mississippi county, Ark., designated in the specifications as section No. 5. The improvement in question included the dredging of Pemiscot Bayou, and crossed a road which was the main artery of travel between the city of Blytheville, Ark., and its trade territory in the northern part of Mississippi county, Ark., and in the state of Missouri. Extending across the bayou was a steel bridge 150 feet in length, which had to be removed in the progress of the work to allow the dredge boat of the contracting companies to pass. September 13, 1920, appellant Harding Construction Company served upon appellee the following notice:

"This will serve to notify you that we will be ready to pass through the steel bridge between sections 27 and 28, township 16 north, range 11 east, on or about September 28, 1920. A ninety-six (96) foot opening will be necessary for the dredge to pass through. Kindly make arrangements to have bridge open, so as to allow passage of dredge with least possible delay. Thanking you for your attention to the matter, we are,

"Yours very truly,

"Harding Construction Co."

Pursuant to this notice the drainage district removed the bridge. The operation delayed the passage of the boat for a period approximating 18 days, during which time its operations were necessarily discontinued. November 1, 1923, appellants brought suit against appellee, asking for reformation of the contract in question, based upon the following allegation in the complaint:

"That it was agreed and understood between the plaintiffs and the defendant, at the time said contract was let and awarded to the plaintiffs, that said drainage district should and would remove all bridges on the right of way, without expense to plaintiffs, in advance of the dredgeboat used by the plaintiffs in the performance of said work, but by and on account of an error of the draftsman of said contract said provision was omitted from the written and printed contract for said work."

Assuming the reformation prayed, the complaint further alleged that the defendant failed to remove the bridge above described from the right of way of the proposed improvement until 18 days after the dredgeboat of appellants reached that point, "during which time said dredgeboat, with a large, expensive crew, was idle, thereby resulting in damage to the plaintiffs in the sum of $6,750," for which appellants prayed judgment, with interest. The answer put in issue the allegations of the complaint. The case was tried on the equity side in the District Court of the United States for the Eastern District of Arkansas, and decree was entered in favor of the defendant, appellee. The court found the issues in favor of defendant, and decreed that the complaint be dismissed for want of equity.

The contention of appellants was and is that it was the duty of the drainage district to remove all bridges on the right of way, and that this duty included that of ascertaining and determining when the removal should take place without the necessity of notice from appellants, and without duty devolving upon appellants to give such notice; further, that appellee is liable to appellants for any

delay resulting from failure to discharge its duty in this respect. Appellants explain the fact that notice was given, despite their contention that none was required, by the claim that, perceiving no move on the part of the district, the notice was sent, out of abundance of caution, to insure the removal of the bridge in ample time. No claim is made that the district did not proceed with diligence after the receipt of the notice. The sole claim disclosed by the record is that the district did not, of its own motion, act in time to prevent the delay charged.

The court found all the issues against appellants. One of these issues was the prayer for reformation of the contract. The contract itself, offered in evidence by appellants, expressly provides: "All trees, buildings, bridges, and other obstructions within the limits of the right of way shall be removed therefrom and disposed of by the contractor in any manner not prohibited by these specifications." On the face of the contract it would appear, without apparent ambiguity, that it was the duty of the contractor, and not of the district, to remove such bridges. However, as disclosed by the record, and in argument and brief, appellee makes no contention that it was not its duty to remove this bridge; the structure being a very considerable one by comparison with the ordinary bridges met with in such rights of way. So that, independently of the contract, this question is removed from contest.

It is the contention of the district, however, that it was entitled to notice from appellants when such removal should be deemed necessary. As we have seen, this bridge was a part of the road, and, indeed, of a main thoroughfare, between Blytheville and parts of Arkansas and Missouri, and the contractors in passing beyond it would, in effect, cut the road. The contract between the parties contained this additional provision:

"Road and Railroad Crossings.—Whenever the ditch crosses a public road the contractor shall give five (5) days' notice to the road overseer of his intention to cut said road, and until a bridge shall be constructed the contractor shall maintain such obstructions or warnings to the public as would be reasonably calculated to prevent accident. Should it be necessary to cross any railroad, the contractor shall give fifteen (15) days' notice to such person as may be designated by such railroad, or, if no person shall be designated, then to the nearest station agent of said railroad, or such time as may have been stipulated by the district with such railroad."

By this clause specific notice from the contractor to the district was provided whenever the ditch crossed a public road or railroad. Conceding, without deciding, that the bridge in question, because of its size and the greater preparation required for its removal, did not fall within these provisions of limited notice, nevertheless, if the duty of removal by the district be read into the contract, as appellants pray, the spirit of that contract would seem to require the giving of notice as an incident thereto. Public necessity would demand that a bridge forming part of a main highway should be out of commission for as short a time as possible. The very nature of the work would bespeak the necessity of notice, in view of the fact that the contract expressly required that notice should be given for the minor operations described therein. Under such circumstances, public interest, and the uncertainties attending dredging operations, would require notice from the contractor in whom special knowledge of further operations would be more exact.

But we think the conduct of appellants and the testimony of the witness Flanagan, the secretary and treasurer of National Contracting Company, and a stockholder in Harding Construction Company, sustains this view independently of abstract reasoning. It is significant that notice was sent exactly 15 days before the dredgeboat reached the bridge. In that notice there is no intimation that it was not required, nor that, in the view of appellants, the drainage district had been remiss in its duty. The notice itself recognizes that the district was not an insurer against delay. It says: "Kindly make arrangements to have bridge open so as to allow passage of dredge with least possible delay."

In his testimony the witness Flanagan says: "I am a practical drainage man. * * * We have been connected several years with the contractors carrying out other contracts in drainage district No. 17. The contract * * * is like the other contracts of the district. The ditches all cross public roads. In every instance the district paid for the removal of the bridges at these crossings, and recognized its liability and obligation to remove the bridges, where it crossed the road. * * * They did it in all the work I was connected with, and that was in a number of instances. * * * The district had ample notice, more than the specifications required, to remove the bridge. They had pretty close to a month's notice, the same as given in similar cases."

It appears convincingly to our minds that, while it seems to be conceded that it was the duty of the district to remove the bridge at its own expense, nevertheless it was entitled to notice of the time when such removal was demanded. Such notice was given. It is neither charged nor proved that thereafter appellee did not discharge its obligation with reasonable diligence.

The decree of the trial court was right, and is affirmed.